New Jersey Department of Labor,
Workmen's Compensation Bureau.

FRANK CAVANAUGH, PETITIONER, v. MURPHY VARNISH
COMPANY, RESPONDENT.

Decided January 6, 1941.

For the petitioner, *David Roskein* (*John A. Laird,* of counsel).

For the respondent, *George E. Meredith.*

\*     \*     \*     \*     \*     \*     \*

At the outset the petitioner's case proceeded on one of two theories, either that a condition of pulmonary tuberculosis was caused or aggravated by the lifting of a can of paint, which caused a strain in his chest, or in the alternative, the dusty atmosphere of the room where he was working caused him to cough, which coughing it was claimed brought on the hemorrhage. The latter theory was abandoned during the course of trial as it appeared from the petitioner's own medical witnesses that coughing would not produce a pulmonary hemorrhage or light up a latent condition of pulmonary tuberculosis.

It, therefore, becomes necessary for me to determine whether or not the petitioner met with an accident arising out of and in the course of his employment on March 24th, 1937, the date of the alleged accident as amended during the course of trial, and if that question is answered in the affirmative, to determine whether the accident aggravated or accelerated a pre-existing condition of pulmonary tuberculosis.

The petitioner testifying in his own behalf stated that he was examined by a physician a few days prior to the date that he obtained employment with the respondent. Following this examination he was given employment, and he testified that while lifting a can or carton of paint weighing approximately seventy-five pounds, he felt a pain in his chest, at which point he left his work, and walked some distance to a hallway where he spit up half a cupful of blood. Thereafter, he reported back to the same physician who examined him prior to his employment, and after a further study of the condition including a sputum test, this doctor advised him not to return to work, and advised him to seek medical attention for his condition which was then diagnosed as active pulmonary tuberculosis. This constituted the petitioner's entire proof of the happening of an accident.

Opposed to this, the respondent produced several lay witnesses. One of these was James Santoriello, a fellow worker. He testified that he saw the petitioner spitting up blood in the hallway, and that when he asked the petitioner what was wrong with him he replied that he thought a cold was breaking up on him. He made no mention to this witness of a strain caused by lifting paint cans.

Mr. Charles Kane was next produced by the respondent. He likewise testified that the petitioner had not at any time reported to him that he had suffered a strain while at work.

Dr. Eugene Robbins was next called by the respondent. He testified that he had made a pre-employment examination of the petitioner, and upon questioning him the petitioner stated that he felt all right and had not suffered from any illnesses prior to the date of his examination except for a minor cold several months before. The doctor testified that this examination was not detailed in character, but was made for the purpose of detecting gross defects. He testified that he further observed that the breath sounds over the chest were barely audible at the time of the pre-employment examination. He stated that he placed no significance on this finding in view of the man's history of good health as the petitioner related it to him at that time. The doctor further testified that the man presented no difference clinically comparing

the petitioner's appearance on the first and second examinations.

It was further developed by the respondent's testimony that the petitioner entered the Newark City Hospital on April 8th, 1937, approximately fifteen days after his last employment and the date on which he claims to have suffered a hemorrhage. On his admission to that hospital the petitioner gave a history to the interne which was placed in evidence by stipulation in view of the fact that the interne was at the time of the hearing located at an inaccessible hospital in Newfoundland, and had advised the respondent that he could not attend the trial. This record was entirely silent as to any claim of a strain while at work or any history of lifting paint cans. The record further showed that the petitioner had given a history of coughing and morning sputum for two years prior to his admission; that for six months prior thereto he had felt generally fatigued; that for the past two months he had suffered an occasional left-sided chest pain, and that for five months prior to admission he suffered from chills and fever. The significance of this testimony is that all of the doctors in the case indicated that with such a history plus a positive sputum test on the date of the alleged accident, one must necessarily conclude that the petitioner had been suffering from an active tuberculosis for many months prior to the date of the alleged accident.

This case presents a factual question which, in turn, must be determined entirely on the credit that one can place in the petitioner's testimony. In many respects the factual question here is similar to the case of *Circelli* v. *Falco,* 19 *N. J. Mis. R.* 213, wherein this court stated:

"* * * his testimony is entirely uncorroborated. While others were on the job, the petitioner produced no one to substantiate his claim of injury, and two of his immediate superiors denied any knowledge or notice of the alleged happening.

"I do not mean to imply that corroboration is necessary in all cases. The word of a petitioner alone, if believable, is sufficient to establish the happening of an accident; but, where corroboration is possible and the petitioner fails to

produce such corroborative evidence, that fact must be considered together with the conduct of the petitioner, both following his accident and during the course of the trial. *Roach* v. *Yellow Cab Co.,* 141 *Atl. Rep.* 767."

From the testimony I am unable to conclude that the petitioner met with an accident arising out of and in the course of his employment for two reasons. First, I conclude that the petitioner's testimony is entirely unworthy of belief because of my reaction to his attitude and demeanor during the course of this trial, and for the further reason that his testimony is in direct conflict with all the other testimony in the case. As I view it, the petitioner has the knack of withholding facts or mis-stating facts, dependent on the effect that either course of action will have on his immediate objective. In other words, when the petitioner was undergoing a pre-employment examination when it was to his obvious advantage to state that he felt fine, he so reported to Dr. Eugene Robbins, the examiner. When he went to the Newark City Hospital to seek aid in the relief of his condition, which was also obviously to his advantage, he felt impelled to state what are probably the true facts in the case, which facts lead to the conclusion that the petitioner had suffered from an active case of pulmonary tuberculosis for several months prior to the date of his alleged accident.

In the second place, if I were to take the petitioner's testimony at its face value and close my eyes to the fact that there is no corroboration of any part of his testimony, but on the contrary, a flat contradiction from the witnesses produced by the respondent, I cannot find from his testimony that the petitioner met with an accident arising out of and in the course of his employment. There is no suggestion in his testimony that he was subjected to an unusual or severe strain, or that he slipped, or that he was in an awkward position, or any other fact which might lead me to conclude that an accident had occurred.

It would seem that the observation of the court in the case of *Wolf* v. *National Grocery Co.,* 14 *N. J. Mis. R.* 69; 182 *Atl. Rep.* 625, is in point. Also the court stated at page 71 of *N. J. Mis. R.* and page 626 of *Atl. Rep.:*

"From a study of all the evidence, it is manifest that the lifting of the carton of groceries and the pain of the initial attack of the disease were merely coincidental. The strain of lifting had no causal relation to the petitioner's condition. The inflammation had matured. He would have been seized with the attack regardless of the activity in which he was engaged at the time. He suffered the affliction despite the lifting, not because of it."

Another case in point is *Johnson* v. *Ulster Iron Works,* 9 *N. J. Mis. R.* 239; 153 *Atl. Rep.* 95; affirmed by the Court of Errors and Appeals, 109 *N. J. L.* 267; 160 *Atl. Rep.* 635. In that case the decedent was seen at his usual place of work near a furnace doing a job described in the decision as a puddler. It was observed that he fell and died of a cerebral hemorrhage. In commenting on the evidence the court stated at page 239 in *N. J. Mis. R.*:

"There is no testimony of an accident. The man was last observed at his place of work. There was nothing unusual in the same or in the manner of the performance of his work. The cerebral hemorrhage might have preceded or followed the fall, yet the most satisfying of the medical testimony indicated a poor heart condition of long standing. * * * There is no testimony that deceased was doing anything different from that which he was called upon to do, and the usual appliances appear to have been in order. There is nothing to suggest an accident save Johnson's death."

To paraphrase the above language and to apply it to the facts under consideration, it might well be said, and particularly so in view of the history as shown in the Newark City Hospital records, that the petitioner had suffered from occasional pains in his chest for five or six months prior to the alleged accident, that "there is nothing to suggest an accident save the fact that the petitioner got another pain in his chest."

Even if I were to find that the circumstances described by the petitioner spell out an accident, which I do not for the reasons above stated, I am unable to find from the greater weight and credibility of the medical testimony that the course of the pre-existing disease was in any manner altered, aggravated or accelerated by the lifting of a can of paint.

Practically all of the doctors in the case appearing for both sides stated that, unaided by history, they would have to conclude that the petitioner was suffering from the end results of a long standing active progressive pulmonary tuberculosis.

Aside from this, even the petitioner's medical experts do not support his theory that the lifting of the can of paint produced the subsequent hemorrhage because of the time interval between the alleged lift and the onset of the hemorrhage. As stated by Dr. Leon Lewis, who appeared for the petitioner, the probability of a causal relationship between the alleged strain and the spitting up of blood followed by the activation of the disease diminishes with the lapse of time. As stated by Dr. Harmon, also appearing for the petitioner, if the strain caused the hemorrhage, the hemorrhage must immediately follow the act of lifting. He fixed the time interval as a split second, or as he expressed it, "the time it takes to draw one's breath." The respondent's doctors testified that the hemorrhage would be coincidental with the lifting, and would necessarily follow as a reflex action immediately following the strain if the hemorrhage were produced by the alleged strain.

The petitioner's testimony was that he lifted the can, felt a pain in his chest, and then walked some distance out into a hallway where for the first time he spit up blood. As I have already indicated, if this testimony were believed, and if it were accepted at its face value, it would not bring the petitioner's case within the rules set out by his own medical experts in their testimony. Further, some doubt is cast upon the petitioner's testimony in this respect by the evidence of James Santoriello, who testified that the truck was some distance from the place where it was supposed to be unloaded, and when he observed it the unloading had not yet been started.

Counsel for the petitioner in his brief cites the leading case on the subject of the activation of a latent or pre-existing pulmonary tuberculosis, *Graves* v. *Burns, Lane & Richardson*, 10 *N. J. Mis. R.* 667; 160 *Atl. Rep.* 399, and also the case of *Rekoon* v. *General Lead Batteries Co.*, 119 *N. J. L.* 296; 196 *Atl. Rep.* 676. I am not unmindful of these decisions,

and am aware of the principle of law involved. In fact, the respondent in its argument concedes that it would be liable for the activation of a dormant disease or the aggravation of an existing one if it is established that an accident occurred, and further that the facts fall within the applicable medical principles.

However, the problem here presented is purely a factual question, and I am called upon to determine two things. First, did the petitioner meet with an accident arising out of and in the course of his employment; second, did the lifting of a can of paint, even if that fact were found in the petitioner's favor, aggravate or accelerate the pre-existing condition of pulmonary tuberculosis? For the foregoing reasons I am constrained to find against the petitioner on both points. The question of notice or knowledge of an accident or injury within ninety days is also argued by the respondent in its brief, but I find it unnecessary to pass upon this question in view of my findings as above stated.

It is, therefore, * * * ordered that the petition be and the same is hereby dismissed, without costs to either party.

HARRY S. MEDINETS,
Deputy Commissioner.